IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| LILIAN FUENTES-ORTEGA, on her own behalf and on behalf of her minor children, H.Y.L.F. and B.M.L.F., <br><br>     Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br>     Defendant. | Civil Action File No. <br> 4:20-CV-00266-MLB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

Defendant United States of America (the "United States") respectfully

shows the Court as follows in support of its Motion to Dismiss or, in the

alternative, to Transfer.

## I.     INTRODUCTION

Plaintiff Lilian Fuentes-Ortega ("Plaintiff") brings this action on behalf of

herself and her minor children under the Federal Tort Claims Act, 28 U.S.C. §§

1346(b)(1), 2671 *et seq.* (the "FTCA"), based on their detention and separation

from each other following their unlawful entry into the United States in or about

late November 2017.  The separation at issue pre-dates former Attorney General

Sessions's April 6, 2018 "Zero Tolerance" memorandum, which, in any event, has since been rescinded.  Furthermore, the United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification.[1]

Nevertheless, this Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction for multiple reasons.  First, Plaintiff's claims collectively are barred by the FTCA's discretionary function, due care, and misrepresentation exceptions.  *See* 28 U.S.C. §§ 2680(a) and (h).  These exceptions preserve the United States' sovereign immunity for discretionary decision-making relating to enforcement of criminal and immigration law, for government actions that were authorized by federal criminal and immigration law, and for claims alleging misrepresentation.  Second, there is no private person analog for Plaintiff's claims, as required for a waiver of sovereign immunity, because the claims arise out of the enforcement of federal statutes, determinations relating to immigration

---

[1] *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021, available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/02/02/executive-order-the-establishment-of-interagency-task-force-on-the-reunification-of-families/ (last accessed on Mar. 18, 2021).

status, and decisions regarding confinement that are activities in which only the government, and not private parties, may engage.

In the alternative, the United States respectfully submits that this action should be transferred to the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1402(b) and 1406(a), or 1404(a).

## II.  BACKGROUND

### A.  Legal Framework for Aliens Entering the United States Unlawfully

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal.  8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals also may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C. § 1325.

Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims.  8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  Specifically, such aliens "shall be detained pending a final determination of

credible fear prosecution and, if found not to have such fear, until removed." 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).

The detention of aliens is further authorized by 8 U.S.C. § 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

Additionally, for aliens who illegally reenter the United States after having been removed, 8 U.S.C. §§ 1231(a)(2) and (5) likewise authorize detention and removal. For such individuals, "the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). The reinstated order "is not subject to being reopened or reviewed," and, absent an applicable exception, the alien "is not eligible and may not apply for any relief" from the order. *Id.*; *see also*, *e.g.*, 8 U.S.C. § 1231(b)(3) (identifying exceptions).

**B.      Legal Framework for Immigration Custody and Release of Minors**

Federal immigration law authorizes the United States to provide custody and care of unaccompanied minor children, who entered the United States unlawfully.  *See* 6 U.S.C. § 279; 8 U.S.C. § 1232.  Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(b)(3) ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  ORR seeks to place UACs "in the least restrictive setting that is in

the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), but "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).

In addition to this legal framework, the federal government has entered into a consent decree (the "*Flores* Agreement") that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]"  *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

The *Flores* Agreement, however, "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").  Nor does it provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-*15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D.

- 6 -

Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of unaccompanied minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores*, 828 F.3d at 908.

### C.    Executive Branch Directives Regarding Immigration Enforcement

As previously identified, the pertinent events of this action pre-date the former Attorney General's April 6, 2018 "Zero Tolerance" memorandum with respect to criminal illegal entry into the United States.[2]

Nevertheless, during the time period relevant to this action, multiple directives issued by the Executive Branch regarding enforcement of federal immigration laws were in effect.  *See*, *e.g.*, Executive Order No. 13767 § 1, 82 Fed. Reg. 8793 (Jan. 25, 2017).  In January 2017, the President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]"  *Id.* § 2(b).  EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of

---

[2] *See* U.S. DOJ, News Release:  Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (Apr. 6, 2018), DOJ 18-417, 2018 WL 1666622.

their removal proceedings or their removal from the country to the extent permitted by law[,]" *id.* § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id.* § 11(d). Later, on April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.[3]

### D.    Background Specific to Plaintiff's Complaint

Plaintiff and her children, B.M.L.F. (now 14 years old) and H.Y.L.F. (now 11 years old) are Guatemalan nationals presently living in Chattooga County, Georgia.  Doc. 1 ¶ 7, 10-11.  However, neither Plaintiff nor either of her children

---

[3] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download (last accessed on March 18, 2021).

is a lawful permanent resident of the United States.  Declaration of Shawn L.

Jordan ("Jordan Decl.") (attached hereto as **Exhibit A**) ¶ 7.[4]

In January 2012, Plaintiff entered the United States unlawfully, without

inspection, under the name Laci Chavez-Morales.  Jordan Decl. ¶ 2.  When

confronted by border patrol agents, Plaintiff admitted she was a citizen of

Guatemala and did not have the required documents to remain in the United

States.  *Id.*  As a result, on January 6, 2012, an expedited order of removal was

issued to her; and, on January 25, 2012, she was removed to Guatemala.  *Id.*; *see*

*also* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Almost six years later, on or about November 25, 2017, Plaintiff entered the

United States again – this time with B.M.L.F. and H.Y.L.F. – at Alta Sonora,

Arizona.  *See* Doc. 1 ¶¶ 13, 15.  Plaintiff alleges that they left Guatemala to escape

abuse and violence from the children's father and her step-father.  *Id.* ¶ 14.

Upon arriving in Arizona, U.S. Customs and Border Protection ("CBP")

agents took Plaintiff and her children into custody and transported them to a

---

[4] This Court may consider the Jordan Declaration without converting this motion
into a motion for summary judgment because the contents of the declaration
pertain to this Court's jurisdiction over the subject matter of this case and
improper venue.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990);
*Kravec v. Chicago Pneumatic Tool Co.*, 579 F. Supp. 619, 620 n.1 (N.D. Ga. 1983).

nearby holding center.  Doc. 1 ¶¶ 20, 22.  After approximately 24 hours, Plaintiff claims that CBP agents and ORR employees informed her that she would be separated from her children and her children would be placed into the custody of the federal government.  *Id.* ¶¶ 36-39, 41.  Plaintiff subsequently informed her children of the separation, and the children were taken to a shelter in Fullerton, California operated by the Crittenton Services for Children and Families.  *Id.* ¶¶ 44, 50, 59, 62-63.  The children remained at the shelter for approximately three months before being released to their aunt in Trion, Georgia.  *Id.* ¶¶ 105-106.

Plaintiff meanwhile remained at the holding center for a short time before being moved to a detention center in Phoenix, Arizona, where she claims that a U.S. Immigration and Customs Enforcement ("ICE") official "tricked" her into signing forms that she believes authorized her removal to Guatemala on December 12, 2017.  Doc. 1, at 11 & ¶¶ 74-75, 81-82, 86, 89.  After returning to Guatemala, Plaintiff claims she went into hiding for four months, during which time she had phone calls with each of her children.  *Id.* ¶¶ 92, 96.

Plaintiff reentered the United States in late June 2018 near Eagle Pass, Texas.  Doc. 1 ¶ 116.  Upon arriving, CBP officers arrested her and transferred her to an Eagle Pass jail.  *Id.* ¶ 117.  She was referred to prosecution and, on November 29, 2018, was convicted in the Western District of Texas of illegal

reentry in violation of 8 U.S.C. § 1326 and sentenced to time-served.  Jordan Decl. ¶ 4.  She then was transferred to ICE custody in Texas.  *Id.*; *see also* Doc. 1 ¶ 118.

On January 5, 2019, while in detention in Texas, Plaintiff applied for withholding of removal and protection under the Convention Against Torture. Jordan Decl. ¶ 5.  An immigration judge denied her applications for protection on May 20, 2019 and ordered her removed based on the prior order of removal. *Id.*  Plaintiff then was transferred to the Irwin County Detention Center in Ocilla, Georgia on July 7, 2019.  Doc. 1 ¶¶ 118, 120, 122.  On August 8, 2019, Plaintiff was released from ICE custody on an order of supervision and reunited with her children.  *Id.* ¶¶ 123, 125; *see also* Jordan Decl. ¶ 6.

Plaintiff subsequently filed this lawsuit on November 17, 2020, asserting six claims under the FTCA:  (a) Count I, for intentional infliction of emotional distress; (b) Count II, for breach of fiduciary duty (on behalf of the children only); (c) Count III, for negligence; (d) Count IV, for negligent supervision; (e) Count VI, for abuse of process; and (f) Count VI, for loss of consortium.  Doc. 1, at 1 & ¶¶ 133-178.  Notwithstanding that the pertinent events occurred in Arizona, Plaintiff purports to bring Counts I through V based on violations of both Georgia and Arizona law.  *Id.* ¶¶ 137, 146, 153, 161, 168.  Plaintiff purports to bring Count VI based exclusively on violations of Arizona law.  *Id.* ¶ 176.

## III.    ARGUMENT AND CITATIONS TO AUTHORITY

### A.    This Court Lacks Subject Matter Jurisdiction over this Case.

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction.  If the Court lacks subject matter jurisdiction, the Court must dismiss the claim.  Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of showing that subject matter jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### 1.    The FTCA's Discretionary Function, Due Care, and Misrepresentation Exceptions Bar Plaintiff's Claims.

A plaintiff "cannot sue the United States unless the United States unequivocally has waived its sovereign immunity."  *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (citing *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015)).  While the FTCA waives sovereign immunity for certain tort claims, it also contains express exceptions that "must be strictly construed in favor of the United States."  *Id.* at 1157 & n.4 (citing 28 U.S.C. § 2680(a), and quoting *Zelaya*, 781 F.3d at 1322).  If an exception applies, the United States retains its sovereign immunity, and the claim must be dismissed for lack of subject matter jurisdiction.  *Cohen v. United States*, 151 F.3d 1338, 1340 (11th Cir. 1998).

Here, the discretionary function and due care exceptions bar Plaintiff's claims for intentional infliction of emotional distress, breach of fiduciary duty, negligence, negligent supervision, and loss of consortium (Counts I-IV and VI),[5] while the misrepresentation exception bars Plaintiff's claim for abuse of process (Count V).

### a. The Discretionary Function Exception Bars Counts I-IV and VI.

The FTCA's discretionary function exception provides that the United States preserves its sovereign immunity for any claim "based upon the exercise or performance or the failure to perform <u>a discretionary function or duty</u> on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  *Foster Logging, Inc.*, 973 F.3d at 1157 (quoting 28 U.S.C. § 2680(a)) (emphasis in original).  Its purpose "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

---

[5] For purposes of this motion, the United States does not dispute that Plaintiff's claim for abuse of process (Count V) falls outside these exceptions because it is among the six intentional torts listed in the "law enforcement proviso" of 28 U.S.C. § 2680(h).  *Cf. Nguyen v. United States*, 556 F.3d 1244, 1257 (11th Cir. 2009) (holding that § 2680(h) may in some circumstances trump § 2680(a)).

"The Supreme Court has developed a two-part test that courts must apply in determining whether challenged conduct falls within the discretionary-function exception to the FTCA's waiver of sovereign immunity." *Foster Logging, Inc.*, 973 F.3d at 1157 (citing *Gaubert*, 499 U.S. at 322); *see also Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "First, a court examines the nature of the challenged conduct or act to determine whether it is 'discretionary in nature,' meaning that it involves 'an element of judgment or choice.'" *Foster Logging, Inc.*, 973 F.3d at 1157 (quoting *Gaubert*, 499 U.S. at 322). To overcome this prong of the test, a plaintiff must identify a violation of a federal statute, regulation, or policy that "specifically proscribes a course of action for an employee to follow." *Autery*, 992 F.2d at 1526 (citing and quoting *Gaubert*, 499 U.S. at 324). "Second, if the challenged conduct involves an element of judgment or choice, a court then determines 'whether the judgment is of the kind that the discretionary function exception was designed to shield.'" *Foster Logging, Inc.*, 973 F.3d at 1157 (quoting *Gaubert*, 499 U.S. at 322-23). "[T]he issue is whether 'the nature of the actions taken' by [the government employees] were 'susceptible to policy analysis.'" *Id.* at 1158 (quoting *Gaubert*, 499 U.S. at 325). "This inquiry is not concerned with 'the subjective intent of the government employee' or whether he or she 'actually weighed social, economic, and political policy considerations before acting.'" *Id.*

- 14 -

(quoting *Ochran v. U.S.*, 117 F.3d 495, 500 (11th Cir. 1997)).  Instead, it requires

courts "to look to the nature of the challenged decision in an objective, or general

sense, and ask whether that decision is one that we would expect inherently to be

grounded in considerations of policy."  *Id.* at 1159 (quoting *Autery*, 992 F.3d at

1530-31).

Here, the challenged conduct from which Counts I-IV and VI arise appears

to be the decision to refer Plaintiff for prosecution and separate her from her

children.  *Compare* Doc. 1 ¶¶ 133-164, 171-178 *with id.* ¶¶ 1-2.  But this type of

conduct involves precisely the sort of discretionary decision-making that is

susceptible to policy analysis and thus shielded by the FTCA.  Indeed, not only

has Plaintiff failed to identify any applicable federal statute, regulation, or policy

that she contends was violated here despite her burden to do so, but it is well-

settled that decisions regarding whether to prosecute and regarding detention

and location of confinement are discretionary in nature.[6]  That the challenged

---

[6] *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney
General and United States Attorneys retain 'broad discretion' to enforce the
Nation's criminal laws."); *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019) ("The second
sentence [of 8 U.S.C. § 1226(a)] *generally* gives the Secretary the discretion either
to detain the alien or to release him on bond or parole.") (emphasis in original);
*Cohen*, 151 F.3d at 1342 (decisions regarding where to place prisoners are policy-
based decisions protected by the discretionary function exception); *Johnson v.
United States, Dep't of Justice*, 694 F. App'x 748, 749-50 (11th Cir. 2017) (explaining

conduct also is susceptible to policy analysis is evidenced by the considerable

legal and regulatory framework discussed in Part II.A-C, *supra*.  As the Ninth

Circuit has explained, decisions relating to aliens, including placement and

detention, are so "vitally and intricately interwoven with contemporaneous

policies [and] so exclusively entrusted to the political branches of government as

to be largely immune from judicial inquiry or interference."  *Comm. Of Cent. Am.*

*Refugees*, 795 F.2d at 1440 (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88

(1975)); *accord Walding v. United States*, 955 F. Supp. 2d 759, 772 (W.D. Tex. 2013)

("[I]t is clear that the ultimate choice of facility for housing unaccompanied alien

children is a decision vested with policy considerations.").

---

that the FTCA "shields the government from liability from its decisions with
respect to which laws to enforce or not enforce") (citing *Smith v. United States*, 375
F.2d 243, 248 (5th Cir. 1967) (holding that the FTCA "exempts the government
from liability for exercising the discretion inherent in the prosecutorial function
of the Attorney General"), and *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983));
*Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986)
("Congress has placed the responsibility of determining where aliens are
detained with the discretion of the Attorney General."); *accord Cosby v. U.S.*
*Marshals Serv.*, 520 F. App'x 819, 821 (11th Cir. 2013) (holding that detainee
medical care decisions were discretionary matters that involved "several policy
considerations . . . including prison security, the allocation of finite resources,
and the logistics of prisoner transportation if transfer to an off-site facility is an
option").

Accordingly, the FTCA's discretionary function exception bars Counts I-IV and VI of Plaintiff's Complaint.

### b.  The Due Care Exception Also Bars Counts I-IV and VI.

The FTCA's due care exception bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising *due care*, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a) (emphasis added).[7]  Among other things, the exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").  Under the due care exception,

---

[7] The due care exception appears to be less prevalent in Eleventh Circuit authority than the discretionary function exception.  In the one decision in which the Eleventh Circuit appears to have referenced it, the court declined to address it on the ground that it already had held that the discretionary function exception barred the plaintiff's claims.  *See Chhetri v. U.S.*, 823 F.3d 577, 583 (11th Cir. 2016).

therefore, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 & n.3 (3d Cir. 1970) (holding that claim based on "enforcement of 'rules and regulations'" was barred by due care exception).  Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction.  *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim where Secretary of the Interior was "authorized, in his discretion, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe"); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979) (applying due care exception to claim based on the FDIC's execution of 12 U.S.C. § 1823(e), pursuant to which the "FDIC was authorized to enter into purchase and assumption agreements with respect to the assets of failing or closed banks").

Here, the United States plainly was authorized by statute to determine whether and where to detain Plaintiff after she entered the country illegally including whether to remove her.  *See* 8 U.S.C. §§ 1225, 1226(a), 1231(a)(2), (a)(5),

and (g)(1).  The United States also had the authority to place her children in the custody and care of ORR while she was detained and following her removal.  *See* 8 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).[8]

Accordingly, Plaintiff's Counts I-IV and VI also are barred by the FTCA's due care exception.

### c.  The Misrepresentation Exception Bars Count V.

The FTCA's misrepresentation exception "bars any claim '[a]rising out of . . . misrepresentation, deceit, or interference with contract rights.'"  *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1264 (11th Cir. 2000) (quoting 28 U.S.C. § 2680(h)).  "The test in applying the misrepresentation

---

[8] As noted above, the statutory UAC definition is a broad one that includes an assessment of parental suitability in determining if the parent is "available."  For example, in *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016), the court upheld the government's authority to determine that a minor was an "unaccompanied alien child" and affirmed transfer to ORR custody even though the minor lived with the mother in their family home because the mother's lack of fitness precluded her from "provid[ing] what is necessary for the child's health, welfare, maintenance, and protection.  Moreover, because Plaintiff was housed in a secure facility, whether or not her children were UACs, the *Flores* Agreement precluded detention of the children in such a facility.  Under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility."  *Flores*, 828 F.3d at 902-03.  Thus, even if the children were not UACs, under *Flores*, the separation still would have occurred once the government exercised its discretion to detain Plaintiff in a secure detention facility.

exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information." *Id.* (citing *Block v. Neal*, 460 U.S. 289, 296 (1983)). "'It is the substance of the claim and not the language used in stating it which controls' whether the claim is barred by [the] exception." *Id.* (quoting *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975)). "Thus, a plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims." *Id.* (citing *Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 958 (5th Cir. 1991)).

Here, Plaintiff's abuse of process claim (Count V) appears to arise from her allegation that an ICE official "tricked" her into signing deportation papers. *Compare* Doc. 1 ¶ 167 (alleging that government employees "issued legal processes within their control for purposes the legal processes never were intended to effect," including "coercing Plaintiffs to abandon their lawful claims to asylum") *with id.*, at 11 & ¶¶ 81-86. This is precisely the type of alleged conduct to which the misrepresentation exception applies. *See Evergreen Marine, Ltd. v. United States*, 789 F. App'x 798, 801 (11th Cir. 2019) (explaining that plaintiff's claims were "squarely covered by the misrepresentation exception because 'the essence of the claim[s] involves the government's failure to use due care in obtaining and communication information.'") (quoting *JBP Acquisitions*,

224 F.3d at 1264); *Cadman v. U.S.*, 541 F. App'x 911, 912-15 (11th Cir. 2013) (affirming dismissal of FTCA claim pursuant to misrepresentation exception based on alleged statement of an ICE official).[9]

Accordingly, the misrepresentation exceptions bars Plaintiff's claim for abuse of process (Count V).

> **2.     Subject Matter Jurisdiction Also is Lacking Because There is No Private Analog for Plaintiff's Claims.**

The FTCA requires that a plaintiff allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

---

[9] The misrepresentation exception also may bar Plaintiff's other claims to the extent they are based on conduct of non-investigative or law enforcement officers.  *See Alvarez v. United States*, 862 F.3d 1297, 1304-06 (11th Cir. 2017) (applying misrepresentation exception to claims for breach of fiduciary duty, negligence, negligent supervision, and negligent infliction of emotional distress). As discussed further in Part III.C, *infra*, however, Plaintiff's Complaint presently is too vague and ambiguous for the United States reasonably to discuss the misrepresentation exception's application to those claims.

Accordingly, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005). *See also Zelaya*, 781 F.3d at 1324 (explaining that "the fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA," and "a state tort cause of action is a *sine qua non* of FTCA jurisdiction") (citations omitted). The FTCA thus does not waive sovereign immunity for claims based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988); *see also Zelaya*, 781 F.3d at 1325 (explaining that, absent a corresponding state law, a court lacks subject matter jurisdiction over the plaintiff's claim).

Here, because each of Plaintiff's claims arise from the federal government's decision to enforce federal immigration laws, which such decision is exclusive to the federal government, there is no private person analog that would support any of Plaintiff's claims. *See Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (dismissing claim for negligent denial of an immigration status adjustment due to the lack of a private person analog); *Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision to take enforcement action under federal

law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) (explaining that "[p]rivate persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor").

Accordingly, such claims should be dismissed for lack for subject matter jurisdiction.

### B. Alternatively, This Case Should be Transferred to the United States District Court for the District of Arizona.

Pursuant to 28 U.S.C. § 1402(b), an FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." It has long been recognized that, for purposes of establishing venue, an alien who is not lawfully admitted for permanent residence "is presumed by law not to reside in any judicial district of the United States regardless of where he or she actually lives." *Alegria v. United States*, 945 F.2d 1523, 1526 (11th Cir. 1991) (citing *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983) (citing *Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894))); *see also De Maria Campos v. U.S.*, No. C 84-180 A, C 84-181, C 84-182A, 1984 WL 26, at *1 (N.D. Ga. Apr. 11, 1984) (holding that "there is no venue

in this district or any other judicial district of the United States for suits brought under section 1402(a)(1) by non-resident aliens").

Here, notwithstanding Plaintiff's allegation that she and her children "reside" in this judicial district (*see* Doc. 1 ¶ 7), she has not lawfully been admitted for permanent residence in the United States. As a result, she must pursue her claims in the judicial district in which the events underlying those claims occurred, which is the District of Arizona. *See* 28 U.S.C. §§ 1402(b), 1406(a). Accordingly, in the event this Court declines to dismiss this case, it should transfer this case to the United States District Court for the District of Arizona.[10]

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court dismiss this action or, in the alternative, transfer it to the United States District Court for the District of Arizona.

---

[10] Transfer to the District of Arizona also would be appropriate under 28 U.S.C. § 1404(a) because, among other things, it is the locus of operative facts, the location of key witnesses, relevant documents and sources of proof, and is more familiar with Arizona law. *See Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1279 (N.D. Ga. 2015) (discussing the nine factors to consider) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Respectfully submitted, this 18th day of March, 2021.

KURT R. ERSKINE
*Acting United States Attorney*

s/ Aaron J. Ross
AARON J. ROSS
*Assistant United States Attorney*
Georgia Bar No. 461981
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone:  404-581-6228
Facsimile:  404-581-6181

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the documents to which this certificate is attached

have been prepared in Book Antiqua font, 13-point type, which is one of the font

and point selections approved by the Court in N.D. Ga. L.R. 5.1(C).

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will automatically send e-mail

notifications of such filing to the following opposing counsel of record:

       Daniel Werner
       James Radford
       RADFORD & KEEBAUGH, LLC
       315 W. Ponce de Leon Ave., Suite 1080
       Decatur, Georgia 30030

This 18th day of March, 2021.

                       s/ Aaron J. Ross
                       Aaron J. Ross
                       *Assistant United States Attorney*

                       *Counsel for Defendant*